UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
No. 25-cr-179(1) (JMB/LIB)

| United States of America, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **Memorandum of Law** |
| vs. | ) | **in Support of** |
| | ) | **Motion to Suppress** |
| Cory Allen McKay, | ) | |
| Defendant. | ) | |

## I. Introduction

Pursuant to FRCrP 12(b)(3)(C), Defendant Cory McKay respectfully submits this Memorandum of Law in support of his motion to suppress evidence which had been procured by means of unlawful search and seizure in violation of the Fourth Amendment, (ECF 21), as described below.

## II. Background

Much of the relevant background information may be found in the original motion, (ECF 21), as well as the government's response thereto, (ECF 22). Additional background was elicited during the motions hearing conducted by the Court, (ECF 25), the contents of which are reflected within an official transcript, (ECF 28 ("Mot. Tr.")).

### A. Charged Offenses

By indictment, the government has charged Mr. McKay with two offenses contained within separate counts:

| Ct | Description | Statute | Allegation |
|---|---|---|---|
| 1 | Conspiracy to distribute methamphetamine | 21 U.S.C. § 841(a)(1), (b)(1)(A) & § 846 | From about April 2024 continuing to June 12, 2024, allegedly conspired with others to distribute 500 grams or more of a substance containing methamphetamine |

1

| 2 | Attempted possession with intent to distribute methamphetamine | 21 U.S.C. § 841(a)(1), (b)(1)(A) & § 846 | On June 12, 2024, allegedly attempted to possess within intent to distribute 500 grams or more of a substance containing methamphetamine |
|---|---|---|---|
| **(ECF 1)** | | | |

The motion to suppress at issue here involves events on or just before the latter date, *i.e.,* June 12, 2024. (ECF 21). In particular, the actions of a private carrier (*i.e.,* FedEx Corporation, more commonly known as "FedEx") in the warrantless search/seizure of a package addressed to Mr. McKay at his residence ("Subject Package"). (ECF 21, at 1). And subsequently—per well-established custom and course of conduct—providing the opened Subject Package to law enforcement for the express purpose of criminal investigation, *e.g.,* testing of substance found within the Subject Package, search of Mr. McKay's residence, and arrest of his person. (ECF 21, at 1-3).

Under these and other relevant circumstances, asserted by Mr. McKay in his motion to suppress, FedEx was acting as an agent of law enforcement in seizing the Subject Package and searching its contents, such that the warrantless search/seizure was unlawful under the Fourth Amendment, and all direct and derivative fruits of the illegality must be suppressed for trial. (ECF 21). The relevant facts were explored during a pretrial motions hearing, (ECF 25), as reflected within an official transcript, (ECF 28 ("Mot. Tr.")).

### B.   Search/Seizure at Issue

For its evidentiary presentation at the motions hearing, the government offered the testimony of two witnesses: (1) FedEx Security Specialist/Officer Michael Ross; and (2) City of Fargo (North Dakota) Detective/Officer Bret Witte. (ECF 25). Relevant portions of said testimony are summarized below:

1.     **Security Officer Ross**

Security Officer Ross explained that FedEx is a private package-delivery carrier, with operations in many geographic locations, including both Minnesota and North Dakota. (Mot. Tr., at 25-26). He stated that FedEx policies permit inspection of packages "suspected of containing contraband." (Mot. Tr., at 26).

Over time, FedEx (and particularly Security Officer Ross) has developed a "working relationship" with Fargo law enforcement for the above purposes. (Mot. Tr., at 17-20). In this vein, Security Officer Ross and Fargo Detective Witte communicate approximately once per month. (Mot. Tr., at 20).

According to Security Officer Ross, FedEx routinely cooperates with law enforcement in searches/seizures of packages, in two situations: (i) "law enforcement reaches out to FedEx and asks * * * to hold or freeze a certain package that law enforcement suspects might contain contraband"; or (ii) a FedEx employee independently decides to inspect a particular package based upon its own criteria—which can include the originating address—and reports "an assumption that it [is] an illegal substance" to law enforcement. (Mot. Tr., at 27-33). This case involves the latter situation.

As relevant here, in the timeframe of June 11-12 of 2024, Security Officer Ross directed FedEx staff to search and seize a package ("Subject Package"), originating from a particular sender ("Sender") and addressed to Mr. McKay at his residence. (Mot. Tr., at

29-33).[1] He explained his decision-making process for search/seizure of the Subject Package, as follows:

> So the night before, which would have been the 11th, I had been -- I had pulled a report of packages coming into the Fargo FedEx location, and in that report I had noticed a package that was coming out of a certain area, and it had a shipping account number that had previously been inspected and contained some sort of contraband. * * * But that account out of California had been suspected of having contraband, and so that would lead me to believe that something -- the same is being shipped from that account * * * to an address in Fargo.

(Mot. Tr., at 29; *accord id.,* at 30). It was later explained that prior packages from Sender were found to have contained the controlled substance known as marijuana, and on this rationale, FedEx was attempting to ascertain whether the Subject Package contained that or any other illegal controlled substance. (Mot. Tr., at 22, 46-47).

Security Officer Ross instructed FedEx staff in the Fargo branch to intercept the Subject Package, *i.e.,* pull the package from standard processing, open the package, and inspect its contents. (Mot. Tr., at 31-32). A Fargo FedEx employee complied with these instructions and discovered what he described as "ten saran wrapped baggies," which were white in color. (Mot. Tr., at 32). FedEx did no scientific tests to determine the precise nature of the substances discovered, but instead merely made "an assumption that it was an illegal substance" of some kind. (Mot. Tr., at 32).

---

[1] The motion to suppress covers the above-referenced Subject Package, as well as a second package originating from Sender and addressed to Mr. McKay at his residence. (ECF 21, at 1-2). This second package was also seized and opened by FedEx, in conjunction with law enforcement. (Mot. Tr., at 35-36, 51-52). However, the government has represented that evidence discovered in connection with the search/seizure of this second package will not be offered at trial. (Mot. Tr., at 54-55). Thus, it would appear the portion of the motion to suppress concerning the second package is moot, unless the government should change its position in the future.

Based upon this "assumption," Security Officer Ross sent a text message to the mobile telephone of Fargo Detective Witte, in conformity with an established course of dealing over a number of prior interactions. (Mot. Tr., at 41). According to Security Officer Ross, the substance of the communications and subsequent actions was as follows:

> Q. Okay. And you and he exchanged a few texts, correct?
>
> A. I said that we had a package that potentially had contraband in it and then what should we do about it, along those lines. Not exactly that, but...
>
> Q. You asked him what you should do about it?
>
> A. Well, just did he want to come and inspect -- to look at it or -- I don't know. I don't know exactly. I don't have the text to refer to, but...
>
> Q. Okay. And Detective Witte directed you, told you, Yeah, I want to come and look at that package?
>
> A. He came to the station, yes, in Fargo.
>
> Q. Okay. He told you on a text to hold that package for him?
>
> A. We were already holding it because we suspected that it was contraband, so we're not going to ship it.
>
> Q. Okay. You held it and reached out to law enforcement?
>
> A. Correct.
>
> Q. To your contact in law enforcement?
>
> A. To a person that I've had -- yes, reached out to in the past.
>
> Q. That you've had contact in the past?
>
> A. Correct.

(Mot. Tr., at 41-42).

### 2.   Fargo Detective Witte

For his part, Detective Witte confirmed the above communication directed to him, and originating from Security Officer Ross. (Mot. Tr., at 10-11, 22). That per that same communication and mutual agreement, Fargo-branch FedEx employees provided the Subject Package to Detective Witte. (Mot. Tr., at 12). That law enforcement took possession of the Subject Package, and accessed the internal packages and tested the substance found therein. (Mot. Tr., at 12-13). And having determined the substance was contraband methamphetamine, transported the Subject Package to Minnesota law enforcement for controlled delivery and search warrant execution at the residence of Defendant Mr. McKay. (Mot. Tr., at 12-13).

Law enforcement then made a controlled delivery of the Subject Package to the residence of Mr. McKay, coupled with the execution of a search warrant and the arrest of Mr. McKay. (ECF 21, at 2). These last law enforcement actions resulted in a number of direct and derivative fruits, which form the basis for the above charges, and which presumably will be offered against Mr. McKay at trial, *e.g.,* the presence of the Subject Package within Mr. McKay's residence, statements, and perhaps other items. (*See id.*).

### III. Discussion

In the case at hand, Mr. McKay has asserted that FedEx conducted the warrantless search and seizure of the Subject Package in a capacity as a government agent, triggering the Fourth Amendment and its exclusionary rule. (ECF 21, at 2-3). The government claims the intrusion is properly classified as a private search/seizure which is not subject to the Fourth Amendment. (ECF 22, at 2). Resolution of the dispute requires discussion of: (A)

6

Fourth Amendment treatment of sealed packages placed with a private carrier for delivery; and (B) circumstances under which a private carrier is properly classified as a government agent, and hence subject to said Fourth Amendment strictures.

### A.   Sealed Packages

The Fourth Amendment forbids unreasonable search and/or seizure of a person's "houses, papers, and effects." U.S. Const., Am. IV. A wrapped parcel that a person has delivered to a private carrier for delivery qualifies as an "effect," under the Fourth Amendment. *United States v. Jacobsen,* 466 U.S. 109, 114 (1984). Further, a sender and/or addressee has a legitimate expectation of privacy as to the contents of any such effects, such that the Fourth Amendment forbids warrantless openings of sealed packages placed with a carrier for delivery. *Id.* Hence, the general rule is that law enforcement must obtain a warrant supported by probable cause, prior to opening any such sealed packages in process of delivery. *Id.* When law enforcement procures evidence by means of a warrantless search/seizure in violation of the Fourth Amendment, the exclusionary rule generally requires suppression of the direct or derivative fruits of said search/seizure. *Utah v. Strieff,* 579 U.S. 232, 237 (2016).

### B.   Government Agent

The above Fourth Amendment rules apply to governmental action; the rules are "inapplicable to a search or seizure * * * effected by a private individual," unless the private actor was "acting as an agent of the [g]overnment or with participation or knowledge of any governmental official." *Jacobsen,* 466 U.S. at 113 (cleaned up); *accord, e.g., United States v. Malbrough,* 922 F.2d 458, 461-62 (8th Cir. 1990) (recognizing that Fourth

Amendment strictures apply to search/seizure conducted by private actor who qualifies as "agent or instrument of the government").

To determine whether a private actor conducted a search/seizure while acting as an agent of the government, courts examine a number factors including: (1) whether the government had knowledge of or acquiesced in the intrusive conduct; (2) whether the private actor intended to assist law enforcement agents, or instead acted to further his own purposes; and (3) whether the private actor conducted the search/seizure at the government's request. *United States v. Smith,* 383 F.3d 700, 705 (8th Cir. 2004). Each factor is examined below:

### 1. Governmental knowledge and/or acquiescence

Governmental knowledge or acquiescence arises when law enforcement develops a formal or informal arrangement with a private actor, to the effect that the private actor will receive a benefit or avoid a penalty in exchange for opening suspicious packages and reporting to law enforcement any contraband or suspicious item found therein. *United States v. Walther,* 652 F.2d 788, 791-93 (9th Cir. 1981) (holding government knew about and encouraged informant's course of conduct in opening packages and reporting results to law enforcement, and hence acquiesced to that same form of conduct in the case at hand even though law enforcement did not have specific pre-knowledge of the package opening at issue; "The DEA [] had knowledge of a particular pattern of search activity dealing with a specific category of cargo, and had acquiesced in such activity."), *cited with approval in United States v. Parker,* 32 F.3d 395, 398-99 (8th Cir. 1994).

Here, Security Officer Ross testified that FedEx does not have a formal or informal relationship with Fargo law enforcement, in the sense that FedEx has no "obligation" to open and inspect suspicious packages. (Mot. Tr., at 37). However, Security Officer Ross allowed that FedEx "does cooperate with law enforcement," including situations like the case at hand. (Mot. Tr., at 37). That is to say, FedEx will routinely inspect and open packages originating from a particular sender who is flagged as having sent controlled substances in the past (in this case a history of sending marijuana), and open and inspect packages from that sender to screen for controlled substances. (Mot. Tr., at 28-31, 43-44, 46-47). And when this procedure yields discovery of suspected or "assum[ed]" controlled substances, FedEx will regularly: make a report to law enforcement; invite law enforcement to take control of the package for testing; and allow law enforcement to make use of the package for its investigative needs. (Mot. Tr., at 31-35). This is precisely the procedure that FedEx followed in the case at hand. *Supra* § II.B.

Successful cooperation with law enforcement benefits FedEx in a number of ways, and thus incentivizes the close "working" relationship. For one, FedEx is able to outsource testing of suspected controlled substances to law enforcement, rather than conducting its own testing. (Mot. Tr., at 32 ("we don't have any type of way to test anything there")). For another, FedEx has previously found itself the target of criminal prosecution for allegedly turning a blind eye to the illegal distribution of controlled substances via its package-carrier services. *See United States v. FedEx Corp.,* No. 3:14-cr-380 (N.D. Cal.) (Doc. No. 28 (superseding indictment), at 1-3 (listing charged controlled substance offenses and describing alleged acts of FedEx)). A close relationship and "cooperation" with law

9

enforcement in the case of packages containing suspected controlled substances goes a long way toward avoiding repeat prosecution. As Security Officer Ross explained:

> Q. [] FedEx does from time to time identify and open up suspected contraband packages, correct?
>
> A. Correct.
>
> Q. Do you know why FedEx has that policy?
>
> A. Why -- just -- legal-wise, I guess, for liability. They -- I really –
>
> Q. FedEx is concerned about getting in trouble with law enforcement if they're an agent of illegal shipping, correct?
>
> A. I can't say exactly, but I imagine there are some legal ramifications if they're finding packages and not doing anything about it.

(Mot. Tr., at 40).

Hence, this is not a case where there exists "no evidence of a close and ongoing relationship between [the carrier] and law enforcement leading up to the [carrier's] search/seizure." *United States v. Gonzalez,* 781 F.3d 422, 427-28 (8th Cir. 2015). Quite the contrary, there is ample evidence of: (i) a "close and ongoing relationship" between FedEx and law enforcement, (ii) for an express law enforcement purpose, (iii) with the expectation of a reward or avoidance of a penalty on the part of FedEx. Accordingly, this factor strongly favors a finding that FedEx was acting as government agent in its search/seizure of the Subject Package. *See Walther,* 652 F.2d at 791-93.

## 2. Intent to assist law enforcement or for own purposes

The second factor looks at whether the private actor's search/seizure was motivated by an intent to assist law enforcement; or alternatively, whether the action was conducted for the private actor's own purposes. *Smith,* 383 F.3d at 705.

In the context of parcel carriers such as FedEx here, courts have found the company had conducted the search/seizure for its own business purposes when based upon a non-law-enforcement-related policy, such as inspection of all packages over a given monetary value or containing dangerous materials. *See, e.g., Parker,* 32 F.3d at 397-99 (search/seizure conducted under policy of inspecting packages insured for more than $1,000); *United States v. Livesay,* 983 F.2d 135, 136-37 (8th Cir. 1993) (search/seizure conducted due to notation on package of "other regulated dangerous material," suggesting package may contain hazardous chemicals). The Eighth Circuit has indicated that a "mixed motive" for the search/seizure—*i.e.,* partly to assist law enforcement and partly to further the company's interests—will not necessarily result in a finding that a private actor is serving as an agent of law enforcement. *Smith,* 383 F.3d at 705-06.

However, this is not a law-enforcement-neutral case, nor even a mixed-motive one. On the contrary, Security Officer Ross expressly selected the Subject Package for search/seizure, on the ground that prior packages from Sender had been found to contain illegal controlled substances. (Mot. Tr., at 22, 29-30, 46-47). And upon discovering suspected controlled substances, he contacted law enforcement for the express purpose of aiding a criminal investigation:

> Q. And, in fact, you have a partner in law enforcement for every region that you can reach out to and deal with that package; is that correct?
>
> A. I wouldn't say "partner," but just as a normal -- I see a crime, I call law enforcement, yes.

(Mot. Tr., at 40). Beyond this, Security Officer Ross indicated that such cooperation with law enforcement is compulsory:

> Q. Now, FedEx, being a reputable company, does cooperate with law enforcement, right?
>
> A. When we *need to*, yes, in cases like this.

(Mot. Tr., at 37 (emphasis added)).

In sum, the search/seizure of the Subject Package was due to an express law enforcement purpose of discovering and reporting suspected controlled substance; not a private-business or law-enforcement-neutral purpose such as inspecting high-value packages or screening for hazardous chemicals. This factor strongly favors a finding that FedEx was acting as a government agent in its search/seizure of the Subject Package.

### 3.     Search/seizure at the government's request

The final factor asks whether the private actor conducted the search/seizure "at the government's request." *Smith,* 383 F.3d at 705. As already observed, while this particular search/seizure of the Subject Package was not conducted at the government's express request, the procedure which triggered the search/seizure exists to placate the government's demand that FedEx cooperate with law enforcement to report shipping of controlled substances or face the threat of criminal prosecution. *See United States v. FedEx Corp.,* No. 3:14-cr-380 (N.D. Cal.) (Doc. No. 28 (superseding indictment), at 1-3). Hence, even

though the government did not request the specific search/seizure of the Subject Package, it did request and demand the broader procedure which triggered the search/seizure. *Walther,* 652 F.2d at 791-93 (holding that law enforcement knew about and encouraged informant's course of conduct in opening packages and reporting results to law enforcement; "The DEA [] had knowledge of a particular pattern of search activity dealing with a specific category of cargo, and had acquiesced in such activity."). Under these circumstances, this last factor favors a finding that FedEx was acting as a government agent in conducting the search/seizure of the Subject Package. *See id.*

## IV. Conclusion

Based on the above discussion, Defendant Mr. McKay respectfully requests that the Court issue a Report and Recommendation (R&R) which suggests an order suppressing any direct or derivative evidence procured as a result of the warrantless search/seizure of the Subject Package, including but not limited to: (i) the purported controlled substances discovered within the Subject Package; (ii) the fruits of the search warrant executed at Mr. McKay's residence; and (iii) any statements or other evidence extracted from Mr. McKay as a result of his June 12, 2024 arrest.

| | |
|---|---|
| Dated: July 28, 2025 | Respectfully submitted, |
| | *s/ Jean Brandl* |
| | JEAN M. BRANDL<br>Attorney ID No. 0387260<br>ERIC RIENSCHE<br>Attorney ID No. 0309126<br>Attorneys for Mr. McKay<br>107 U.S. Courthouse<br>300 South Fourth Street<br>Minneapolis, MN 55415 |